Matter of Lily A. (Tenise ZZ.) (2024 NY Slip Op 02566)

Matter of Lily A. (Tenise ZZ.)

2024 NY Slip Op 02566

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

CV-23-0474
[*1]In the Matter of Lily A. and Others, Alleged to be Neglected Children. Otsego County Department of Social Services, Respondent; Tenise ZZ., Appellant, et al., Respondent.

Calendar Date:March 27, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and Fisher, JJ.

Jonathan L. Becker, Cooperstown, for appellant.
Denise J.B. Hollis, County Attorney, Cooperstown (Corrie A. Damulis of counsel), for Otsego County Department of Social Services, respondent.
Larisa Obolensky, Bovina Center, attorney for the children.

Egan Jr., J.P.
Appeal from an order of the Family Court of Otsego County (Michael F. Getman, J.), entered February 22, 2023, which, in a proceeding pursuant to Family Ct Act article 10, temporarily removed the subject children from respondents' custody.
Respondent Tenise ZZ. (hereinafter the mother) and respondent Brandon A. (hereinafter the father) are the parents of the subject children (born in 2015, 2017 and 2021). Petitioner commenced this neglect proceeding on September 14, 2022, seeking to remove the children from respondents' care as the result of, among other things, allegations that the children were living in a home without running water in June 2022, that the father had overdosed while caring for the children in July 2022, and that the mother had punched and seriously injured the maternal grandmother in the children's presence earlier in September 2022. Family Court executed an order to show cause on the same day which temporarily removed the subject children from respondents' care and placed them with the grandmother. Following a hearing conducted pursuant to Family Ct Act § 1027, Family Court continued the temporary removal and placement. The mother appeals.
We affirm. "It is well settled that, in determining a removal application pursuant to Family Ct Act § 1027, 'a court must engage in a balancing test of the imminent risk with the best interests of the child and, where appropriate, the reasonable efforts made to avoid removal or continuing removal' " (Matter of Isayah R. [Shaye R.], 149 AD3d 1223, 1224 [3d Dept 2017], quoting Nicholson v Scoppetta, 3 NY3d 357, 380 [2004]; see Family Ct Act § 1027 [b]; Matter of Riley P. [Raymond S.], 171 AD3d 757, 759 [2d Dept 2019]). The hearing here included the testimony of one of petitioner's caseworkers, who had investigated the June, July and September 2022 incidents. The caseworker testified as to how she conducted a home visit in June 2022 and found a lack of running water at respondents' residence that forced the children to go to a neighbor's house to bathe, as well as how she offered SNAP benefits and housing services to address the situation. The caseworker further described how she confirmed that the father had overdosed in July 2022 and how the mother was again offered services and agreed to a safety plan prohibiting the father from having unsupervised contact with the children. The caseworker then set forth how she spoke to both the mother and the grandmother in the wake of the September 2022 incident and learned that the two women had become embroiled in an argument at the grandmother's residence — where the mother and the children were, by then, living — during which the mother had punched the grandmother. The caseworker made clear that the children were in the room and saw this occur, with one telling the caseworker that "mom pushed grandma and punched her and there was blood everywhere." Notwithstanding the fact that the mother punched the grandmother hard enough to put her in the hospital with [*2]a brain bleed and mouth lacerations, the caseworker added that the mother saw nothing wrong with her actions because, in her view, she was acting in self-defense after the grandmother had shoved her. The grandmother, as well as an eyewitness to the September 2022 incident, confirmed in their testimony that the mother had punched the grandmother and knocked her out in front of the children.
Although the hearing evidence called the foregoing accounts into question in very limited respects, Family Court credited the proof that the children had been living in a home without running water under respondents' care, that the father had engaged in illegal drug activity shortly thereafter and that, despite petitioner's efforts to engage respondents to address the serious concerns raised by those events, the mother then "engaged in acts of domestic violence" against the grandmother in front of the children.[FN1] According deference to the credibility determinations of Family Court, that proof provided a sound and substantial basis in the record for its determination that the children "would be subject to imminent risk if [they] were to remain in [the mother's] care, and that the risk could not be mitigated by actions other than removal" (Matter of Riley P. [Raymond S.], 171 AD3d at 759; see Matter of Junny B. [Homere B.], 200 AD3d 687, 688-689 [2d Dept 2021]; Matter of Isayah R., 149 AD3d at 1224). Thus, Family Court properly directed that the children be temporarily removed from the mother's care and placed with the grandmother, whom the proof reflected had been relied upon as a placement before without incident (see Family Ct Act § 1027 [b] [i] [C]).
The mother's remaining arguments have been examined and found to be lacking in merit.
Aarons, Pritzker, Lynch and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother suggests that, because the grandmother purportedly instigated the September 2022 argument and pushed the mother at some point during it, the mother's response of punching the grandmother out in front of the children somehow failed to constitute domestic violence. Without belaboring the point, we do not agree (see e.g. Matter of Esther N.[Onyebuchi N.], 206 AD3d 564, 564-565 [1st Dept 2022]).